UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-CV-000234-RLV-DSC

| | | |
|---|---|---|
| **MEINEKE CAR CARE CENTERS, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | **PRELIMINARY INJUNCTION** |
| **DENNIS CATTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the court on Plaintiff's Verified Complaint and Motion for a

Preliminary Injunction, filed May 21, 2010 (Document #1), and Plaintiff's Memorandum of Law

in Support of Its Motion for a Preliminary Injunction, also filed May 21, 2010 (Document #3).

For the reasons that follow, this Court will <u>grant</u> Plaintiff Meineke Car Care Centers, Inc's

("Meineke") motion for a preliminary injunction enjoining Defendant Dennis Catton's ("Catton")

continued use of the Meineke trademark and enjoining Catton's continued breach of a covenant not

to compete.

## <u>FACTS</u>

This motion arises out of Catton's refusal to abide by the post-termination obligations

contained in his Franchise Agreement with Meineke and violations of the Lanham Act.

On September 29, 2008, Catton entered into a Franchise Agreement with Meineke, which

granted him the right to operate a Meineke Center in Colorado. (Compl. ¶ 20.) Under the Franchise

Agreement, Meineke authorized Catton to operate an auto repair center under the trade name

"Meineke", display the Meineke name, receive training and access to Meineke's methods, and

participate in an established network of licensed repair centers. (Compl. ¶ 21.) Catton also agreed to pay Meineke weekly franchise fees and to provide Meineke with accurate weekly business reports of gross revenue. (Compl. ¶ 22.)

At some point during the term of the Franchise Agreement, Catton breached his obligations by failing to pay franchise fees and failing to submit weekly business reports. (Compl. ¶ 24.) On November 17, 2009, Meineke sent Catton a Notice of Default and informed him that if he did not cure the defaults within thirty days, Meineke could terminate his franchise license. (Compl. ¶ 25.) Catton failed to cure the defaults, and Meineke terminated his license effective January 5, 2010. (Compl. ¶ 26.)

The Franchise Agreement contained a series of post-termination obligations, including obligations (1) to pay Meineke "all royalties . . . amounts owed for purchases from [Meineke] or [its] Affiliates, interest due on any of the foregoing and all other amounts owed . . .", (2) to "not directly or indirectly at any time or in any manner use any Mark, . . . or any other indicia of a Meineke Center," and (3) to "discontinue using for any purpose, all signs, fixtures, posters, decor items, advertising materials, forms and other materials and supplies which display any of the Marks . . . associated with Meineke." (Franchise Agreement ¶¶ 15.1-2.)

The Franchise Agreement also contained a non-compete clause that prohibited Catton, for a period of one year after termination, from:

> directly or indirectly . . . own[ing] a legal or beneficial interest in, manag[ing], operat[ing], or consult[ing] with: (a) any Competitive Business located at the Premises [of Catton's former Meineke Center]; (b) any Competitive Business located within a radius of 6 miles of [the Premises]; (c) any Competitive Business located within a radius of 6 miles of any Meineke Center in operation on the effective date of termination or expiration.

(Franchise Agreement ¶ 11.4.)

Notwithstanding the Franchise Agreement, Catton continues to operate a competing business under the name "Catton's Auto & RV Services," which is located within six miles of his former Meineke Center. (Compl. ¶ 30.) Catton is also using Meineke's trademarked name on checks and offering the same services as he did when he was an authorized Meineke franchisee. (Compl. ¶¶ 30-31.)

Meineke filed a complaint and this motion requesting that the Court enter a Preliminary Injunction on two accounts: enjoining Catton's continued use of Meineke's trademark, and enjoining Catton's breach of the covenant not to compete.

## ANALYSIS

### A. Standard for Granting Preliminary Injunction

To obtain a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4], that an injunction is in the public interest." Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009) (alteration in original) (quoting Winter v. Nat'l Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008)), vacated by --- S.Ct. ----, 2010 WL 1641299 (April 26, 2010), reinstated in relevant part by -- F.3d ----, 2010 WL 2280619 (4th Cir. June 8, 2010). For the reasons articulated below, Meineke has established all four requirements needed to obtain a preliminary injunction for both claims.

### B. Trademark Infringement

First, Meineke has made a clear showing of likelihood of success on the merits with regard to its trademark infringement claim by showing (1) that it has a valid, protectable trademark and (2) that Catton has engaged in an unauthorized use of Meineke's mark that is likely to cause confusion

among consumers. To succeed on a trademark infringement claim, the plaintiff must show that its trademark was used by the defendant without its consent and that the unauthorized use was likely to cause confusion. Burger King Corp. v. Mason, 710 F.2d 1480, 1491 (11th Cir. 1983).

Here, Catton is using checks bearing Meinke's trademarked name without permission. Meineke expressly revoked Catton's authorization to use the trademark in its Notice of Termination to Catton. Additionally, Catton's use of Meineke's trademarked name is also likely to cause customer confusion concerning the origin of goods or services. In Burger King Corp, the Court held that "continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement." Id. at 1492. Thus, Catton's unauthorized use of the Meineke trademark demonstrates that it is likely to succeed on the merits of its trademark infringement claim.

Second, Meineke has made a clear showing that it will likely suffer actual, imminent, and irreparable harm if the Court does not grant the requested preliminary injunction. In Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 939 (4th Cir. 1995), the Court acknowledged that the "irreparable injury necessary for injunctive relief regularly follows from trademark infringement." Here, Meineke will be harmed in the form of damage to its goodwill and reputation with consumers, loss of customers, and corresponding lost sales. Thus, Meineke satisfies the irreparable harm element needed to obtain a preliminary junction

Third, the balance of equities tips in favor of Meineke because Meineke will suffer immediate and irreparable harm whereas Catton will suffer little, if any harm. Additionally, any harm Catton may suffer would be self-inflicted. Defendant agreed to certain consequences in the Franchise and Trademark Agreement for failing to abide by the terms of the Agreement. In S & R

Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 379 (3rd Cir. 1992), when a franchisor sought a preliminary injunction to enjoin the defendant from using the Jiffy Lube trademark, the Court held that "self-inflicted harm is far outweighed by the damage done by the infringement of its trademark." Thus, the balance of equities tips in favor of Meineke.

Fourth, granting the preliminary injunction is in the public interest because the public could be deceived and confused by Catton's unauthorized use of the Meineke name.  In S & R Corp., the Court held that, "Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest." 968 F.2d at 379. Since Catton's use of Meineke's trademark is likely to confuse the public, it is in the public's interest for the Court to grant Meineke's motion for preliminary injunction.

Therefore, because Meineke satisfies the four elements needed to obtain a preliminary injunction on its trademark infringement claim, the Court grants Meineke's motion as to this claim.

### C. The Covenant Not to Compete

First, Meineke has made a clear showing of likelihood of success on the merits with regard to its covenant not to compete.  The covenant was written and agreed to by the parties in Article 11.4 of the Franchise Agreement and was based upon valuable consideration.  A covenant not to compete is valid in North Carolina[*] if : 1) it is reasonably necessary to protect the legitimate interests of the person seeking enforcement; 2) it is reasonable with respect to time and territory; and 3) it does not interfere with the interest of the public. Bicycle Transit Auth. v. Bell, 314 N.C. 219, 226 (1985).

---

[*]The Meineke Franchise Agreement contains a Choice of Law Provision (§17.1) stating, "This agreement and all issues arising from or relating to this Agreement will be governed by and construed under the laws of the State of North Carolina…" (Doc. #1-1, 38). Both North Carolina and Colorado courts recognize the validity of such choice of law provisions.  Sawyer v. Market America, Inc., 661 S.E.2d 750, 794 (N.C. Ct. App. 2008); URS Group, Inc. v. Tetra Tech FW, Inc., 181 P.3d 380, 384 (Colo. Ct. App. 2008).

Here, enforcement of the covenant not to compete is necessary to protect the legitimate business interests of Meineke. Meineke has expended substantial resources developing its processes, manuals, advertising materials, etc. and on building goodwill and obtaining a national reputation as a provider of automotive services. By signing the Franchise Agreement, Catton recognized and took advantage of the value of the confidential and proprietary information Meineke gave him. During the term of his agreement with Meineke, Catton received training, assistance, and a protected territory in which to build a successful automotive business. If the Court allows Catton to continue operating his store in violation of the covenant not to compete, Catton will be able to use the confidential and proprietary information he acquired from Meineke to take business away from them.

The covenant is also reasonable in time and territory. The one-year restriction is reasonable because other courts have upheld periods in excess of one year in similar circumstances. See e.g. Keith v. Day, 343 S.E.2d 562, 567-68 (N.C. Ct. App. 1986) (two-year covenant reasonable); Triangle Leasing Co., Inc. v. McMahon, 393 S.E.2d 854, 858 (N.C. 1990) (two-year restriction reasonable). The territory of a six (6) mile radius is also reasonable because it is clearly within the range of what North Carolina courts have deemed reasonable in similar circumstances. See e.g. Keith, 343 S.E. 2d at 567-68 (greater Raleigh area was reasonable); Forrest Paschal Mach. Co. v. Milholen, 220 S.E.2d 190, 197 (N.C. Ct. App. 1975) (350 mile restriction enforced).

Additionally, the covenant does not violate public policy. In United Labs., Inc. v. Kuykendall, 370 S.E.2d 375, 380 (N.C. 1988), the Court observed that "it is as much a matter of public concern to see that valid [covenants] are observed as it is to frustrate oppressive ones." Furthermore, North Carolina courts have held that much broader covenants not to compete do not

violate public policy. See e.g., Triangle Leasing Co., Inc., 327 N.C. 224 (enforcing a non-compete clause that restrained defendant from soliciting the business of plaintiff's known customers in any area in which the company operated for a period of two years).

Therefore, since Meinke is able to establish that the covenant not to compete is reasonably necessary to protect legitimate interests, is reasonable with respect to time and territory, and does not interfere with the interest of the public, Meineke demonstrates that it is likely to succeed on the merits.

Second, Meineke has made a clear showing that it will likely suffer actual, imminent, and irreparable harm. Meineke's goodwill and reputation with consumers will be damaged if Catton continues to violate the covenant not to compete and to use Meineke's proprietary information. Additionally, Meineke will also be harmed if Catton uses the knowledge, manner, and training obtained through the former Franchise relationship to gain customers within the restricted area. Catton will be able to draw customers away from other Meineke franchises by offering services at lower prices because Catton is no longer paying franchise fees. This will unfairly burden other Meineke franchisees with unfair competition. Furthermore, if Catton were permitted to continue violating the non-compete agreement, it would undermine the value of all of the non-compete agreements Meineke has with other franchisees.

Third, the balance of equities tips in the favor of Meineke because the damage that would result if Catton were allowed to continue to violate the covenant outweighs any harm to Catton from enforcement of the covenant. Catton specifically agreed to abide by the covenant when he signed the Franchise Agreement with Meineke. Thus, any harm he suffers is a consequence of his failure to abide by the Agreement.

Fourth, granting the preliminary injunction is in the public interest because the public could be deceived and confused by Catton's unauthorized use of the Meineke name. Further, Catton would continue to unfairly compete with Meineke's authorized area franchisees.

In light of the foregoing, the Court grants Meineke's motion for preliminary injunction as to this claim.

## CONCLUSION

Because Plaintiff Meineke has established all four elements needed to obtain a preliminary injunction for both of its claims, this Court **GRANTS** Meineke's motion for a preliminary injunction and enjoins Defendant Catton's continued use of Meineke's trademark and his breach of the covenant not to compete.

Specifically, Catton is **ORDERED** as follows:

1.    To cease and refrain until January 5, 2011, in accordance with the convenant not to compete, from directly or indirectly (such as through corporations or other entities owned or controlled by him) owning a legal or beneficial interest in, managing, operating, or consulting with any business performing exhaust, brakes, or shocks and struts services at the premises of former Center No. 857 or within six (6) miles of former Center No. 857 (including Catton's business location at 5425 W. 80th Ave, Arvada, CO) or within six (6) miles of any other Meineke Center existing as of the date that Center No. 857 was terminated on January 5, 2010;

2.    To cease using and/or remove and/or have removed any names, marks, signs, forms, advertising, manuals, computer software, supplies, products, merchandise, and all other things and materials of any kind which are identified or associated with the

Meineke name, logo, or marks, or which contain a name, logo, or mark confusingly similar to the Meineke name, logo, or marks including, but not limited to, checks with the Meineke name issued from Catton's competing business;

3.   To cease making any representation or statement that Catton or the business located at 5425 W 80th Ave, Arvada, CO, 80003 is in any way approved, endorsed, or licensed by Meineke, or is identified with Meineke in any way; and

4.   To return to Meineke all signs, forms, manuals, supplies, computer software, products, merchandise, and all other things and materials of any kind which are identified or associated in the mind of the consuming public with Meineke.

Signed: June 24, 2010

Richard L. Voorhees
United States District Judge